b

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | |
|---|---|
| **RAY WILLIAMS,**<br>Plaintiff | **CIVIL DOCKET NO. 1:17-CV-01366** |
| **VERSUS** | **DISTRICT JUDGE DRELL** |
| **JELD-WEN, INC.,**<br>Defendant | **MAGISTRATE JUDGE PEREZ-MONTES** |

## MEMORANDUM ORDER

Before the Court are Motions to Compel filed Plaintiff Ray Williams ("Williams") and Defendant Jeld-Wen, Inc. ("Jeld-Wen"). ECF Nos. 89, 101. Jeld-Wen seeks an order to produce: (1) a settlement agreement her reached in a previous lawsuit against a prior employer; and (2) emails between Williams's wife and Williams's attorney. Jeld-Wen also seeks costs and attorney fees. ECF No. 89. Jeld-Wen's Motion to Compel (ECF No. 89) is GRANTED IN PART AND DENIED IN PART, and its Motion for Attorney's Fees and Costs (ECF No. 89) is DENIED.

Williams filed a Motion to Compel Jeld-Wen to fully answer each if his discovery requests pursuant to Fed. R. Civ. P. 33(b)(4) and 34, contending Jeld-Wen waived its objections to the requests by submitting its answers and responses late. ECF No. 101. Williams's Motion to Compel (ECF No. 101) is GRANTED IN PART AND DENIED IN PART, and his motion for Attorney's Fees and Costs (ECF No. 101) is DENIED.

I. **Jeld-Wen's Motion to Compel is GRANTED IN PART AND DENIED IN PART and its Motion for Attorney's Fees and Costs is DENIED.**

    A. **Jeld-Wen's Motion to Compel Williams to Produce Plaintiff's Settlement Agreement is DENIED.**

Jeld-Wen asks the Court to compel Williams to produce a settlement agreement with a previous employer in a prior lawsuit.  ECF No. 89.  In his deposition, Williams testified that he had previously sued a prior employer and that the case had settled.  When Jeld-Wen requested the settlement agreement, Williams' attorney refused, explaining that the settlement agreement contained a confidentiality agreement that prohibited Williams from disclosing the facts underlying the case.

Jeld-Wen argues, vaguely, that Williams' allegations in the prior case "would have a bearing on Williams's credibility."  Citing *Sonnino v. University of Kansas Hospital Authority*, 2004 WL 769325 (D. Kan. 2004), Jeld-Wen argues that the Court need not address the argument that the evidence is not admissible at trial, but only need determine whether it is reasonably calculated to lead to the discovery of admissible evidence, such as proof of intent or  impeachment evidence.

Fed. R. Civ. P. 26(b)(1) governs the scope of discovery.  It provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any

discoverable matter. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *See Davis v. Young*, 2012 WL 530917, at *3 (E.D. La. 2012) (citing *Export Worldwide, Ltd. v. Knight*, 241 F .R.D. 259, 263 (W.D. Tex. 2006)).

As a general matter, Rule 26(b)(1) provides for two types of discoverable information: "unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to the claim or defense of any party. . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C)."

While the Federal Rules of Procedure do not define "relevant," courts turn to the definition in Federal Rule of Evidence 401: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See Enron Corporation Savings Plan v. Hewitt Associates, L.L.C.*, 258 F.R.D. 149, 159 (S.D. Tex. 2009). "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that

3

the information sought may be relevant to the claim or defense of any party . . . ." *See Enron Corporation Savings Plan*, 258 F.R.D. at 159 (citing *Merrill v. Waffle House, Inc.,* 227 F.R.D. 467, 470 (N.D. Tex. 2005)).  The party resisting discovery bears the burden to clarify and explain its objections and to provide support for those objections. *See id.*

Relevance, for the purposes of Rule 26(b)(1), is when the request is reasonably calculated to lead to the discovery of admissible evidence. *See Van Dyke v. Retzlaff*, 2020 WL 1866075, at *1 (E.D. Tex. 2020) (citing *Crosby v. Louisiana Health & Indemnity Co.*, 647 F.3d 258, 262 (5th Cir. 2011)).  Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery."  Fed. R. Civ. P. 37(a)(1).  *See Van Dyke*, 2020 WL 1866075, at *1.  The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence.  *See Van Dyke*, 2020 WL 1866075, at *1 (citing *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006)).

Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome, or

oppressive, and thus should not be permitted.   *See id[1]; see also Enron Corporation Savings Plan*, 258 F.R.D. at 159 (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1485 (5th Cir. 1990) (holding that objections to document requests on the ground that they were "overly broad, burdensome, oppressive, and irrelevant" were insufficient)).   "[B]oilerplate objections are not acceptable . . . specific objections are required in responding to a Rule 34 request."   *Enron Corporation Savings Plan*, 258 F.R.D. at 159 (citing *Frontier–Kemper Constructors, Inc. v. Elk Run Coal Company, Inc.,* 246 F.R.D. 522, 528 (S.D. W. Va. 2007)).

Jeld-Wen argues broadly that the settlement agreement in Williams' prior case against a different employer is "reasonably calculated" to lead to the discovery of evidence regarding Plaintiff's credibility and his intent or motive in filing his claims.   Jeld-Wen has not produced either its discovery request or Williams's response to it.

In *Sonnino*, the Court "agree[d] with Plaintiff that information pertaining to an EEOC charge of discrimination that she filed against a prior employer is not relevant to whether the adverse employment actions taken against her by defendants in this case were motivated by discriminatory animus," but were relevant "to the defense of these claims, specifically the credibility of Plaintiff's

---

[1] Rule 26(b) "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition."   *Dockery v. Christopher Epps*, 2014 WL 1573327, at *4 (S.D. Miss. 2014) (citing *Crosby v. Louisiana Health Services and Indemnity Co.*, 647 F.3d 258, 264 (5th Cir. 2011)).

allegations of discrimination in this case." *Sonnino*, 2004 WL 769325 at *2.  It appears that, in *Sonnino*, the court did not require a specific showing of how the previous settlement agreement is "reasonably calculated to lead to the discovery of admissible evidence."  No specifics were discussed in the opinion.

In this case, Jeld-Wen has likewise offered no reasoning as to how the prior settlement agreement, from an unrelated case, is "reasonably calculated" to lead to the discovery of admissible evidence.  Although Jeld-Wen claims the documents are relevant to Williams's credibility, it has not explained how.

Williams testified in his deposition that he sued his previous employer (Greenbriar/Gunderson Rail Services) in 2007 or 2008 for age discrimination and because other employees placed some drawings on his desk: (1) a picture of clansmen with the clan emblem and a teardrop; (2) a picture of an African with a bone through his nose and by his eyes; and (3) a picture of the cartoon character Snoopy dressed in camouflage and shooting black men.  ECF No. 95-1 at 7-8.

Williams also testified that similar graffiti was laced on tank cars and box cars, and that once another employee held up a noose for him to see.  ECF No. 95-1 at 8.  Williams testified that he had also been passed over for promotions at Greenbriar.  ECF No. 95-1 at 8.  Williams had a different attorney for the previous lawsuit.  ECF No. 95-1 at 9.  Williams also testified that, under the terms of the

settlement agreement, Greenbriar paid him a sum of money and he agreed to leave its employ.[2]  ECF No. 95-1 at 8.

In *Salvatorie Studios, International v. Mako's, Inc.*, 2001 WL 913945, at *1 (S.D.N.Y. 2001), the court was also presented with a request for a settlement agreement from a previous, unconnected lawsuit.  Citing Rule 26(b)(1), the Court found the defendant had failed to demonstrate relevance because it failed to establish that the settlement agreement it sought was in any way relevant to the claims or defenses raised in *this* action—a different lawsuit against a different party.

"Once a settlement is filed in district court, it becomes a judicial record.  The presumption in favor of the public's common law right of access to court records therefore applies to settlement agreements that are filed and submitted to the district court for approval." *Bradley on behalf of AJW v. Ackal*, 954 F.3d 216, 225–26 (5th Cir. 2020).  "There is no established presumption of access" to information contained in settlement documents that were "entered into on a confidential basis between the parties and are not themselves a part of the court record." *Bradley on behalf of AJW*, 954 F.3d at 225–26 (citing *Gambale. Deutsche Bank AG*, 377 F.3d 133, 143 (2d Cir. 2004)).

---

[2] Williams's attorney submitted a copy of the settlement agreement to the Court for *in camera* inspection.  An inspection is not required because Jeld-Wen has not carried its burden of proof regarding relevance.

In this case, the settlement agreement sought by Jeld-Wen was not filed into the record of the court.  Instead, the parties simply notified the court the case had settlement and the case was dismissed.. *See Williams v. Gunderson Rail Services*, 3:07-CV-00887 (W.D. La.) (Monroe Division).

Jeld-Wen has not explained how obtaining Williams's written settlement agreement with his previous employer would lead to the discovery of admissible evidence as to Williams's credibility.  *See Morris v. Aircon Corp.*, 2016 WL 7665418, at *2 (E.D. Tex. 2016) ("Aircon was  unable to articulate how these potential needs fell within the 'claim or defense' rubric in Rule 26."); *Gardner v. Huott*, 2015 WL 12733406, at *10 (W.D. Tex. 2015) (Because Plaintiffs did "not present an analysis to demonstrate which claim(s) or defense(s) to which the information at issue is relevant or explain why the requests are reasonably calculated to lead to the discovery of admissible evidence" and "fail[ed] to present argument to support their conclusory assertion," their motion to compel was denied.); *Castillo v. Bank of America, N.A.*, 2013 WL 12394348, at *8 (W.D. Tex. 2013) (Because "plaintiff's motion to compel provides no argument or authority to show such information and documents is a 'nonprivileged matter that is relevant to any party's claim or defense,' including information that may not be admissible at the trial, but is reasonably calculated to lead to the discovery of admissible evidence" . . . "plaintiff has not sustained his burden to show the issuance of an order compelling further discovery is appropriate.").

8

Williams's previous lawsuit was filed ten years before this action and clearly involved different circumstances and defendants.  The only connection is similarity in the nature of some of Williams's claims.[3]  Because Jeld-Wen has not explained why or how the settlement agreement in that prior action is likely to lead to the discovery of admissible evidence in this action, Jeld-Wen's Motion to Compel discovery of the settlement agreement (ECF No. 89) is DENIED.

**B.** **Jeld-Wen's Motion to Compel Williams to produce email correspondence between his wife and his attorney is DENIED.**

Jeld-Wen asks the Court to Compel Williams to produce email correspondence between Williams's wife (Maudie Williams) and Williams's attorney (James Carroll).  ECF No. 89.   Williams claims the marital privilege and the attorney-client privilege.

During his deposition, Williams testified: "when I come home I have my wife, she writes things down for me."  ECF No. 95-1 at 39 (dep. p. 152).  Williams testified that his conversation with the HR manager was something he would have written down in his diary.  ECF No. 95-1 at 39 (dep. p. 152).

---

[3] If Jeld-Wen seeks the settlement agreement in order to try to evaluate the value of Williams's claim, a court in this Circuit has already held that "a settlement agreement and its impact on an *evaluation* of the case and potential future settlements" is not "relevant to the merits of a claim or defense" and therefore not discoverable for that reason.  *See Morris*, 2016 WL 7665418, at *2.

Jeld-Wen made a discovery request for that diary or written chronology. Williams responded that it is protected by the attorney-client privilege, and attached a privilege log that references emails dating back to 2018 from Maudie Williams to James Carroll.  Apparently, because this action had already been filed, Williams would tell his wife about his interactions at work and she would "write them down" in an email to Williams's attorney.

Jeld-Wen contends that Williams's privilege log references emails dating back to 2018 from Maudie Williams to attorney James Carroll.  Jeld-Wen asks the Court to compel Williams to produce those emails.

Williams's attorney, James Carroll, contends that those emails are protected by the attorney-client privilege (as stated in the privilege log) and the marital privilege.  Jeld-Wen responds that neither privilege is applicable.

### 1.  <u>The spousal privilege is not applicable.</u>

Communications between the spouses, privately made, are generally assumed to have been intended to be confidential, and hence they are privileged; but, wherever a communication, because of its nature or the circumstances under which it was made, was obviously not intended to be confidential, it is not a privileged communication.  *See Wolfle v. United States*, 291 U.S. 7, 14 (1934); *see also United States v. Livingston,* 272 Fed. Appx. 315, 316-17 (5th Cir. 2008).

The spousal privilege only permits Williams to prohibit disclosure to a third party (such as Jeld-Wen) by Maudie Williams of a communication made to her by

Williams.  It does not preclude disclosure by Carroll (a third party) to another third party of a communication between Williams and Maudie that Maudie has already disclosed to Carroll.  *See United States v. Koehler,* 790 F.2d 1256, 1258 (5th Cir. 1986) (citing *Wolfle,* 291 U.S. at 14 ("[T]he spousal communication privilege applies only to husband/wife communications when no third party is present.")).

In *Johnson v. Oscar Winski Company, Inc.,* 2020 WL 4539620, at *3 (N.D. Ind. 2020), the court expressly rejected the argument (also made by Plaintiff herein) that "the marital privilege meshes into the attorney-client privilege to create a unit of three persons where confidentiality remains unbroken."

Therefore, the spousal privilege does not protect Maudie Williams's emails to Williams's attorney.

### 2. The attorney-client privilege is not applicable.

Williams also asserts the attorney-client privilege protects the emails between his wife and his attorney.  Jeld-Wen contends the attorney-client privilege does not protect Maudie Williams's communications with Williams's attorney.[4]

The purpose of the attorney-client privilege to be "to encourage clients to make full disclosures to their attorneys."  *United States v. El Paso Co.,* 682 F.2d 530, 538 (5th Cir. 1982), cert. den., 466 U.S. 944 (1984) (quoting *Upjohn Co. v.*

---

[4] To the extent that Jeld-Wen may still argue that Maudie Williams sent Williams's attorney a "diary,"  it is noted that Williams admitted only the existence of emails from his wife to his attorney, not of a "diary."  There does not appear to be a pre-existing document that were transferred to Williams's attorney.

*United States*, 449 U.S. 383, 389 (1981)).   Sound legal advice or advocacy serves

public ends and depends upon the lawyer being fully informed by the client.   *See El*

*Paso Co.,* 682 F.2d at 538.   The privilege protects only those disclosures necessary to

obtain informed legal advice which might not have been made absent the privilege.

*See Fisher v. United States*, 425 U.S. 391, 403 (1976).

The attorney-client privilege only protects disclosure of communications.   It

does not protect disclosure of the underlying facts by those who communicated with

the attorney.   *See Upjohn Co.*, 449 U.S. at 395–96.   "[T]he protection of the privilege

extends only to *communications* and not to facts.   A fact is one thing and a

communication concerning that fact is an entirely different thing."   *Upjohn Co.*, 449

U.S. at 396.   "The client cannot be compelled to answer the question, 'What did you

say or write to the attorney?' but may not refuse to disclose any relevant fact within

his knowledge merely because he incorporated a statement of such fact into his

communication to his attorney."   *Upjohn Co.*, 449 U.S. at 396.

"A party invoking the attorney-client privilege bears the burden of

demonstrating its applicability and must show: (1) that he made a *confidential*

communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of

securing either a legal opinion or legal services, or assistance in some legal

proceeding."   *Tonti Mgmt. Co., Inc. v. Soggy Doggie, L.L.C.*, 2020 WL 9172077, at *3

(E.D. La. 2020).   Disclosure of privileged communications to a third party generally

eliminates the confidentiality of the attorney-client privilege and serves to waive

the privilege. *See Tonti Mgmt. Co., Inc.*, 2020 WL 9172077, at *4. This waiver rule, however, is subject to certain exceptions. *See Tonti Mgmt. Co., Inc.*, 2020 WL 9172077, at *3.

The attorney-client privilege is not waived by disclosure of confidential communications to third parties if those third parties are "agents" or "representatives" of the client who made or received a confidential communication for the purpose of effecting legal representation for the client, while acting in the course and scope of employment for the client. *See Tonti Mgmt. Co., Inc.*, 2020 WL 9172077, at *4. Disclosure of an attorney-client communication to an agent is privileged only "if the disclosure was to an agent 'whose services are necessary for effective [legal] representation of the client's interests.'" *See Tonti Mgmt. Co., Inc.*, 2020 WL 9172077, at *5 (*citing Louisiana Municipal Police Employees Retirement System v. Sealed Air Corp.,* 253 F.R.D. 300, 311 (D.N.J. 2008)). This means that the agent must "evaluate the information and in a sense 'translate' it into understandable terms for the non-expert attorney." *See Tonti Mgmt. Co., Inc.*, 2020 WL 9172077, at *5 (*citing Louisiana Municipal Police Employees Retirement System,* 253 F.R.D. at 312).

The party who claims that a third party is its agent for purposes of the privilege bears the burden of showing that the person in question worked at the direction of the lawyer, and performed tasks relevant to the client's obtaining legal advice, while responsibility remained with the lawyer. *See Tonti Mgmt. Co., Inc.*,

2020 WL 9172077, at *5.   The critical inquiry is whether the representative "furthers the provision of legal services to the client."   *See Tonti Mgmt. Co., Inc.*, 2020 WL 9172077, at *5.

Williams bears the burden of showing that his wife worked at the direction of his attorney, Carroll, when she emailed his attorney regarding Williams's daily interactions with his co-workers.   *Compare King v. University Healthcare System, L.C.*, 2009 WL 10679780, at *5 n. 38 (E.D. La. 2009); *see also El Paso Co.*, 682 F.2d at 541.   Williams has not done that.   Williams indicates, instead, that his wife wrote down his daily interactions with co-workers and emailed it to Williams's attorney at Williams's instigation.   Therefore, the attorney-client privilege is not applicable.

Williams further argues that Carroll represented both he and his wife. However, Williams is the only named Plaintiff in this action.   Williams has not produced a contract to show Carroll is representing both Williams and his wife. Finally, Williams has not shown that he and his wife have a "common legal interest" privilege, since that applies only to: (1) communications between co-defendants in actual litigation and their counsel; and (2) communications between potential co-defendants and their counsel.   *See Tonti Mgmt. Co., Inc.*, 2020 WL 9172077, at *4.   The common legal interest privilege has not been extended to plaintiffs. *See Tonti Mgmt. Co., Inc.*, 2020 WL 9172077, at *4 n. 25 (citing *BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Estate Advisor, Inc.*, 614 Fed. Appx. 690, 703 (5th Cir. 2015)).

14

It is noted that, from Williams's statements in his deposition concerning the emails to his attorney, the emails concerned his interactions with co-workers while at work.  In other words, the emails concerned facts as to who he interacted with, when, and how.  Those are facts which are otherwise discoverable by Jeld-Wen and which are not protected by the attorney-client privilege.

Because the emails are not protected by a privilege, Jeld-Wen's Motion to Compel discovery of the emails from Maudie Williams to Williams's attorney (ECF NO. 89) IS GRANTED.  Williams SHALL PROVIDE the emails to defense counsel WITHIN 14 DAYS OF THE DATE OF THIS ORDER.

Plaintiff's counsel SHALL FILE A NOTICE OF COMPLIANCE with the Court WITHIN 14 DAYS from the date of this order.

### C. Jeld-Wen's Motion for Attorney Fees and Costs is DENIED.

Jeld-Wen asks for an award of attorney fees and costs.  Fed. R. Civ. P. 37(a)(4)(A) provides that when a motion to compel is granted, "the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response,

or objection was substantially justified, or that other circumstances make an award of expenses unjust." *See Walker v. Petry*, 2006 WL 1084003, at *1 (W.D. La. 2006).

A movant may be considered a "prevailing party" for attorney's fees purposes if he succeeds on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit. *See Abner v. Kansas City Southern Railway Co.*, 541 F.3d 372, 382 (5th Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1933)). This is a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is "reasonable. *See Hensley*, 461 U.S. at 433.

Because the existence and factual content of the emails was largely disclosed to Jeld-Wen by Williams during his deposition, and Jeld-Wen could have otherwise discovered the facts as to  Williams's employee interactions by questioning or deposing the employees themselves,  Jeld-Wen's Motion for Attorney's Fees and Costs (ECF No. 89) associated with its Motion to Compel is DENIED.

## II.   <u>Williams's Rule 37 Motion to Compel discovery responses is GRANTED IN PART AND DENIED IN PART, and his Motion for Attorney's Fees and Costs is DENIED.</u>

Williams filed a Rule 37 Motion to Compel Jeld-Wen to comply with all of his discovery requests, as well as a Motion for Attorney's Fees and Costs. ECF No. 101. Williams cites Fed. R. Civ. P. 33, contending that Jeld-Wen waived its right to object to his discovery requests because it filed untimely responses.

A.    <u>Background</u>

Williams alleges that he sent his First Request for Interrogatories and Requests for Production of Documents to Defendant on February 12, 2020. Defendant's responses were due March 13, 2020, but Williams's attorney gave Jeld-Wen's counsel an informal extension of time to answer, to March 13, 2020. ECF No. 101-1 at 1.

Shortly thereafter, Jeld-Wen terminated its relationship with that law firm. New counsel were enrolled on March 13, 2020. Defense counsel inquired on July 15, 2020 whether prior counsel had responded to Williams's discovery request. ECF No. 101-1 at 1. On being told they had not, defense counsel stated she would send the responses as soon as possible. Williams received discovery Answers to Interrogatories on November 9, 2020 and Responses to Requests for Production on December 30, 2020. ECF No. 101-1 at 2; ECF No. 119 at 12.[5]

On March 1, 2021, Williams's attorney mailed and emailed a letter to defense counsel, detailing deficiencies in their discovery responses. Defense counsel supplemented their answers to interrogatories on March 25, 2021, and supplemented their responses to requests for production of documents on April 22 and 26, 2021. ECF No. 101-1 at 2; ECF No. 119 at 12.

Plaintiff's counsel than sent a Second Set of Requests for Production of Documents on May 4, 2021. On May 5, 2021, Williams received Defendant's "First

---

[5] Defendant contends responses to both the First Set of Request for Production and the First Set of Interrogatories were provided on November 9, 2020.

Amended Response to Request for Production of Documents," involving renumbering of the Bates stamps.  ECF No. 101-1 at 2.

On June 10, 2021, Williams sent Defendant a second set of Interrogatories and a letter to counsel detailing the documents they had agreed to produce in the depositions of George Plunkett and Crystal Green on June 7, 2021.  ECF No. 101-1 at 2; No. 101-2.  On June 23, 2021, Williams sent a second letter to Defense counsel inquiring about the documentation that was to be produced after the June 7, 2021 depositions.   Williams also sent a Third Set of Requests for Production of Documents.  ECF No. 101-1 at 2; No. 101-3.

During a Rule 37 conference on July 14, 2021, Williams's attorney asked defense counsel why they had not responded to Plaintiff's discovery.   Defense counsel's response was "you know what to do."  ECF No. 101-1 at 3.

After the Rule 37 conference on July 14, 2021, Plaintiff received Defendant's Third Supplemental Response to Plaintiff's First Set of Requests for Production of Documents.   ECF No. 101-1 at 2; ECF No. 119 at 12.   Defendant responded to Williams's Second Request for Production of documents on July 27, 2021.  ECF No. 101-1 at 2; ECF No. 119 at 12.  On August 3 or 4, 2021, Defendant sent its answers to plaintiffs second set of interrogatories and its responses to Plaintiff's third set of requests for production of documents.  ECF No. 101-1 at 2; ECF No. 119 at 12.

On August 18, 2021, Williams sent a third letter to defense counsel regarding their responses to the requests for production of documents and held a Rule 37

counsel with defense counsel to address defendant's objections.   Williams then filed this Motion to Compel as to certain requests for production of documents, arguing Defendant had waived all objections by providing untimely responses to Williams's discovery requests.  ECF No. 101.

On September 9, 2021, Defense counsel sent supplemental responses to Williams's Third Set of Requests for Production of Documents.  ECF No. 119 at 12.

### B.   Jeld-Wen's objections to Williams's Second and Third Sets of Requests for Production of Documents are waived.

Under Fed. R. Civ. P. 33(b), a party must serve its answers and any objections to interrogatories within thirty days after being served with the interrogatories.  "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons."  Fed. R. Civ. P. 34(b)(2)(B).  An evasive or incomplete response is treated as a failure to answer or respond.  Fed. R. Civ. P. 37(a)(4).  *See Ocean Sky International, L.L.C. v. The LIMU Company, L.L.C.*, 2020 WL 4927516, at *4 (W.D. La. 2020).

Absent good cause, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, then any objections thereto are waived.  *See Jackson v. YRC, Inc.*, 2016 WL 3566250, at *2 (W.D. La. 2016) (citing *In re: United States of America*, , 1156 (5th Cir. 1989)).  Courts have held that Rule 34 implicitly incorporates both the waiver and "good cause" provisions of Rule

33(b)(4).   *See RE/MAX International, Inc. v. Trendsetter Realty, L.L.C.*, 2008 WL 2036816, at *6 (S.D. Tex. 2008).   Courts generally make no distinction between interrogatories and requests for production.   *See Madison One Holdings, L.L.C. v. Punch International, B.V.*, 2008 WL 11483220, at *1 (S.D. Tex. 2008).[6]

Untimely objections are waived "unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4); *see also Madison One Holdings, L.L.C.*, 2008 WL 11483220, at *1 (citing *In re United States*, 864 F.2d at 1156); *Bolden v. Federal Emergency Management Agency*, 2007 WL 2990547, at *1 (E.D. La. 2007) (Defendant's failure to provide timely responses to plaintiffs' interrogatories and requests for production resulted in its waiver of all objections.).   It is insufficient to provide untimely written responses that are subject to and contain waived objections.   *See also Bolden*, 2007 WL 2990547, at *1.   This waiver applies to all

---

[6] Counsel have an obligation, as officers of the court, to assist in the discovery process by making diligent, good-faith responses to legitimate discovery requests.   *See McLeod, Alexander, Powel & Apffel, P.C.*, 894 F.2d at 1486; *see also Innova Hospital San Antonio, Limited Partnership v. Blue Cross and Blue Shield of Georgia, Inc.*, 892 F.3d 719, 729 at n. 9 (5th Cir. 2018).   Where no explanation or excuse for a failure to timely serve responses and objections to interrogatories is given, a party fails to demonstrate good cause to excuse this failure.   *See Talley v. Spillar*, 2017 WL 9288622, at *3 (W.D. Tex. 2017) (citing *Paralikas v. Mercedes Benz, LLC*, 2008 WL 111186, at * 1 (E.D.N.Y. 2008) ("In cases where, as here, no good cause has been shown for the late responses, a finding of waiver is appropriate.")).   Delays caused by the flouting of discovery deadlines "are a particularly abhorrent feature of today's trial practice."   *McLeod, Alexander, Powel & Apffel, P.C.*, 894 F.2d at 1486 (citing *Geiserman v. MacDonald,* 893 F.2d 787, 792 (5th Cir. 1990)).   "They increase the cost of litigation, to the detriment of the parties enmeshed in it; they are one factor causing disrespect for lawyers and the judicial process; and they fuel the increasing resort to means of non-judicial dispute resolution.   Adherence to reasonable deadlines is critical to restoring integrity in court proceedings."   *Id.*

objections, including objections based on attorney-client privilege and work product. *See Madison One Holdings, L.L.C.*, 2008 WL 11483220, at *1.

However, there are exceptions to automatic imposition of a waiver. Courts have found that, pursuant to Rule 26(b)(5) which concerns withholding information on the basis of privilege, the failure to timely object on the basis of privilege does not result in an automatic waiver. *See B&S Equipment Co., Inc. v. Truckla Services, Inc.*, 2011 WL 2637289, at *5 (E.D. La. 2011); *see also Seals v. Shell Oil Company*, 2013 WL 12439172, at *3 (E.D. La. 2013). Moreover, a court may not order discovery responses that violate a statutory proscription. *See In re United States*, 864 F.2d at, 1156. And some courts have allowed untimely discovery objections even in the absence of a good-cause showing. A court has the "discretion to decline to compel production of requested documents even if a timely objection has not been made '... when the request far exceeds the bounds of fair discovery (4)27' " *See RE/MAX International, Inc.*, 2008 WL 2036816, at *6. A court can also refuse to find waiver where the requested information is neither relevant to the subject matter of the suit nor reasonably calculated to lead to the discovery of admissible evidence. *See Salman v. Balderas*, 2019 WL 11005040, at *2 (E.D. La. 2019).

In determining whether good cause exists and waiver should be denied, a court may resort to a factor-based test: "(1) the length of the delay or failure to particularize; (2) the reason for the delay or failure to particularize; (3) whether

there was any dilatory or bad faith action on the part of the party that failed to raise the objection properly; (4) whether the party seeking discovery has been prejudiced by the failure; (5) whether the document production request was properly framed and not excessively burdensome; and (6) whether waiver would impose an excessively harsh result on the defaulting party." *Enron Corp. Savings Plan v. Hewitt Associates, L.L.C.*, 258 F.R.D. 149, 157 (S.D. Tex. 2009); *see also Salman,* 2019 WL 11005040, at *3. "Acknowledging the harshness of a waiver sanction, courts have reserved the sanction for those cases where the offending party committed unjustified delay in responding to discovery. Minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances militate against finding waiver." *Salman,* 2019 WL 11005040, at *3 (citing *Enron Corp. Savings Plan*, 258 F.R.D. at 157).

Still, "[g]enerally, in the absence of an extension of time or good cause, the failure to file a written response in the time fixed by the rule constitutes a waiver of any objection." *Salman,* 2019 WL 11005040, at *2 (quoting *Ordoyne v. McDermott, Inc.,* 2000 WL 1154616, at *1 (E.D. La. 2000)); *see also Serigne v. Preveau*, 2013 WL 1789520, at *3 (E.D. La. 2013); *Seals*, 2013 WL 12439172, at *3; *B & S Equipment Co. v. Truckla Services Inc.,* 2011 WL 2637289, at *5 (E.D. La. 2011).

Although Williams did not file a Motion to Compel responses to his First Set of Discovery, it is noted that Defendant's responses to those interrogatories were almost eight months late and the responses to the requests to production of

22

documents were nine-and-a-half months late.  After Plaintiff's counsel gave an informal extension of time, current defense counsel enrolled on the day those responses were due, made no inquiry about them until mid-July 2020, then sent the responses several months after that.  Defendant alleges generally that there were delays due to COVID (in 2020).

However, in mid-2021, defense counsel continued to send untimely discovery responses to Williams—seven-and-a-half weeks late for the responses to the Second Set of Requests for Production of Documents, and six weeks late for the responses to the Third Set of Requests for Production of Documents.

For good cause for its dilatoriness as to the Second and Third Sets of discovery, defense counsel contends the delays were caused by "COVID-19," the fact that Williams has filed four EEOC charges, and the large amount of information sought by Williams in discovery.  ECF No. 119 at 13.

However, by July of 2021, vaccines were available and many COVID-related restrictions had been lifted.  Moreover, the number of EEOC charges filed by Williams is irrelevant, particularly where the discovery on each charge appears to have some overlap.  Even if Williams sought a large and burdensome amount of information (which he does not appear to have done), that is not "good cause" for delaying a response.  Williams's attorney had already shown himself willing to grant informal extensions and wait on discovery as long as Jeld-Wen appeared to be working with him.

Accordingly, Defendant generally waived its objections to Williams's second and third sets of discovery.   However, as discussed below, that waiver does not mean that Williams is automatically entitled to the information he seeks.

1.   **Plaintiff's Motion to Compel for Request for Production No. 28 is GRANTED IN PART AND DENIED IN PART.**

In his Second Set of Requests for Production, Williams asks Jeld-Wen to "[p]roduce the personnel files for the following employees or former employees of Jeld-Wen, including but not limited to their application, resume, jobs bids, and test results."  Williams lists 17 employees.

Jeld-Wen responded that its employees' personnel files may contain medical information and personal data identifiers that it is prohibited from disclosing pursuant to Rule 5.2.  Jeld-Wen further argues that it has been unable to determine how eight of the persons named by Williams may be related to the instant lawsuit, whether they have facts relevant to the action, or whether they are or were employees of Jeld-Wen.

Discovery of the personnel files of all persons presents special concerns about the privacy rights of the individuals involved. *See Zantiz v. Seal*, 2013 WL 2459269, at *3 (E.D. La. June 6, 2013), aff'd, 602 Fed. Appx. 154 (5th Cir. 2015).   Any employment personnel files can be expected to contain much information that is personal and private, including medical records and personal data identifiers of the type contemplated by Fed. R. Civ. P. 5.2(a), and that is irrelevant to a particular

24

lawsuit.  *See Zantiz*, 2013 WL 2459269, at *3.  This does not mean that a party is never entitled to discover relevant portions of the personnel files of an opponent's employees or that everything contained in them is irrelevant.  *See Zantiz*, 2013 WL 2459269, at *3.  The court must balance the interests of the parties in obtaining relevant discovery against the privacy interests of individual employees.  *See Zantiz*, 2013 WL 2459269, at *3.

Thus, "a district court has discretion to determine whether discovery of such files is warranted."  *Zantiz*, 2013 WL 2459269, at *3 (citing *Knoll v. American Telephone & Telegraph Co.,* 176 F.3d 359, 365 (6th Cir. 1999); *Atkinson v. Denton Publishing Co.,* 84 F.3d 144, 148 (5th Cir. 1996)).  Before production of such documents might be ordered, an *in camera* inspection of the documents may be appropriate to determine both their relevance and their need for confidentiality, if any.  *See Zantiz*, 2013 WL 2459269, at *3 (citing *Atkinson*, 844 F.3d at 148).

Jeld-Wen contends that some of the information in the employee files cannot be disclosed pursuant to Fed. R. Civ. P. 5.2.  However, Rule 5.2 provides for *redaction* of protected information[7] from documents filed with the Court.  It does not provide a ground for a complete failure to comply with a discovery request.  Jeld-Wen should have cooperated with Williams and produced redacted employee files, instead of filing an overbroad objection.  However, Williams has not explained to the

---

[7] Rule 5.2 provides for redaction of an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number, with specific exceptions, from filings made with the Court.  Additional information may redacted for good cause.

Court why he needs employee medical records.  Therefore, medical records should also be redacted from the employee files.

Jeld-Wen's objection that eight of the persons named by Williams may not have been employees of Jeld-Wen, and may not be related to or relevant to this lawsuit, is unacceptably vague.  Jeld-Wen could and should have provided definitive information as to employment status and specific objections as to each person. However, Williams's Motion to Compel Production No. 28 (ECF No. 101) is DENIED IN PART.  Jeld-Wen is not required to provide employee information as to any persons who have never worked at Jeld-Wen, and as to those persons for whom Williams did not provide a last name.

Williams's Motion to Compel Production No. 28 is also GRANTED IN PART (ECF No. 101).  Jeld-Wen is ORDERED to provide employee information as to the named employees, WITH APPROPRIATE REDACTIONS for social-security numbers, taxpayer-identification numbers, birth dates, the name of minors, financial-account numbers, and medical records,[8] is GRANTED.   JELD-WEN'S OBJECTION AS TO RELEVANCE IS WAIVED.

Counsel for both parties SHALL MEET WITHIN 14 DAYS of the date of this Order and discuss what other employee information can be excluded from production as unnecessary.  Jeld-Wen IS ORDERED TO PRODUCE the employee information requested by Plaintiff's counsel WITHIN 7 DAYS THERAFTER.

---

[8] And any other personal information that counsel for the parties can agree is private or is not necessary.

Defense counsel SHALL FILE A NOTICE OF COMPLIANCE with the Court WITHIN 21 DAYS from the date of this order.

> ### 2.   Plaintiff's Motion to Compel Requests for Production Nos. 29, 30, 31, 33, 34, 35, and 37 is DENIED AS MOOT.

In his Third Set of Requests for Production, Williams requests documents that defense counsel contends are or have already been provided.  In one instance, Doc. No. 29, the document has been requested by defense counsel, who states it will be provided when received.  Williams has not explained what he is attempting to compel as to these requests.

As to Williams' Third Set of Requests for Production, Nos. 29, 30, 31, 33, 34, 35 and 37, Williams's Motion to Compel is DENIED AS MOOT.

As to Request No. 29, IT IS ORDERED that, if it has not already been provided, Jeld-Wen SHALL SUBMIT WITHIN 14 DAYS of the date of this order, "a copy of the job posting that George Plunkett testified [to] at his deposition on June 7, 2021, [that] was either currently posted or had recently been removed from the job board."

Defendant SHALL FILE A NOTICE OF COMPLIANCE with the Court WITHIN 14 DAYS from the date of this order.

> ### 3.   Plaintiff's Motion to Compel for Request for Production No. 32 is GRANTED.

In his Third Set of Requests for Production, in Request No. 32 Williams asks for "a copy of the backup reports referenced in Exhibit # 9 of the June 7, 2021

deposition of George Plunkett of 30 unsubmitted PM's as well as 286 late submitted PM's."   Defense counsel objected to the request, stating it cannot produce documentation regarding "unsubmitted PM's," but that documentation reflecting the late-submitted PM's has been requested and will be supplemented upon receipt.

Williams's Motion to Compel his Request for Production No. 32 (ECF No. 101) is GRANTED.  To the extent it has not already done so, WITHIN 14 DAYS Defense counsel shall provide the "late-submitted PM's to Plaintiff.  Defense counsel shall also, WITHIN 14 DAYS, make every effort to obtain the "unsubmitted PM's" (see George Plunkett's deposition), and shall notify Plaintiff's Counsel of its efforts and findings, and provide the documents, if found.

      **4.**     <u>**Plaintiff's Motion to Compel for Request for Production No. 36 is GRANTED IN PART AND DENIED IN PART.**</u>

In Request No. 36, Williams requests" copies of all job postings that have been posted to the job board for all millwright positions since January 1, 2021, along with the names of each individual that applied for the posted positions; whether or not they took examinations for the posted positions; and who was ultimately selected for each posted millwright position, as well as copies of the selected individuals' tests (if any).

Defendant argues the request is overbroad and irrelevant to the pending litigation.  Specifically, Defendant contends Williams has alleged individual disparate treatment, and not a class action with a pattern and practice claim.

Therefore, Williams is not entitled to the personnel information of employees that have no relation to the claims in Williams' lawsuit.

However, Defendant contends it is "currently confirming whether there have been advertisements for Millwright positions in 2021" and whether Williams applied for them, and intends to supplement its response.

Plaintiff's Motion to Compel is GRANTED IN PART AND DENIED IN PART as to Request for Production No. 36.  Because Plaintiff's request for the names and tests of all employees who applied for the positions is overbroad and burdensome, Defendant is not required to provide the names of every individual who applied for the job, nor is it required to provide copies of the tests taken by any of the applicants.  Therefore, to that extent, Plaintiff's Motion to Compel is DENIED.

However, to the extent it has not already done so, and WITHIN FOURTEEN DAYS, Defendant is ORDERED TO: (1) provide copies of all job postings that have been posted to the job board for all millwright positions since January 1, 2021; (2) provide the names of the employees who were ultimately selected for those jobs; and (3) state whether or not the employees selected for the jobs took examinations for the posted positions.

Defendant SHALL FILE A NOTICE OF COMPLIANCE with the Court WITHIN 14 DAYS from the date of this order.

      5.    <u>Plaintiff's Motion to Compel for Request for Production No. 38 is DENIED.</u>

Williams asks the Court to compel Defendant to provide a copy of the offer extended to Williams for a millwright position.  Defendant objects to this request, contending that no offer was ever extended to Williams for a millwright position.

Because Defendant has adequately answered the request, Williams' Motion to Compel is DENIED as to Request for Production No. 38.

      B.    <u>Plaintiff's Motion for Attorney's Fees and Costs is DENIED.</u>

Williams also moves for an award of attorney fees and costs.  ECF No. 101. Because most of Williams's discovery requests had already been satisfied and some have been denied, Williams's Motion for Attorney's Fees and Costs (ECF No. 101) is DENIED.

## III.   <u>Conclusion</u>

As discussed above, IT IS ORDERED that:

Jeld-Wen's Motion to Compel Discovery of the settlement agreement (ECF No. 89) is DENIED.

Jeld-Wen's Motion to Compel discovery of the emails from Maudie Williams to Williams's attorney (ECF NO. 89) IS GRANTED.  Williams SHALL PROVIDE the emails to defense counsel WITHIN 14 DAYS OF THE DATE OF THIS ORDER. Plaintiff's counsel SHALL FILE A NOTICE OF COMPLIANCE with the Court WITHIN 14 DAYS from the date of this order.

Jeld-Wen's Motion for Attorney's Fees and Costs (ECF No. 89) associated with its Motion to Compel is DENIED.

Williams's Motion to Compel (ECF No. 101) is DENIED IN PART for Request for Production No. 28. Jeld-Wen is not required to provide employee information as to any persons who have never worked at Jeld-Wen, and as to those persons for whom Williams did not provide a last name.

Williams's Motion to Compel (ECF No. 101) is also GRANTED IN PART for Request for Production No. 28. Jeld-Wen is ORDERED to provide employee information as to the named employees, WITH APPROPRIATE REDACTIONS for social-security numbers, taxpayer-identification numbers, birth dates, the name of minors, financial-account numbers, and medical records,[9] is GRANTED. JELD-WEN'S OBJECTION AS TO RELEVANCE IS WAIVED. Counsel for both parties SHALL MEET WITHIN 14 DAYS of the date of this Order and discuss what other employee information can be excluded from production as unnecessary. Jeld-Wen IS ORDERED TO PRODUCE the employee information requested by Plaintiff's counsel WITHIN 7 DAYS THERAFTER. Defense counsel SHALL FILE A NOTICE OF COMPLIANCE with the Court WITHIN 21 DAYS from the date of this order.

As to Williams' Third Set of Requests for Production, Nos. 29, 30, 31, 33, 34, 35 and 37, Williams's Motion to Compel (ECF No. 101) is DENIED IN PART AS MOOT, except as provided below for No. 29.

---

[9] And any other personal information that counsel for the parties *agree* is private or is not necessary.

As to Request for Production No. 29, IT IS ORDERED that, if it has not already been provided, Jeld-Wen SHALL SUBMIT WITHIN 14 DAYS of the date of this order, "a copy of the job posting that George Plunkett testified [to] at his deposition on June 7, 2021, [that] was either currently posted or had recently been removed from the job board."   Defendant SHALL FILE A NOTICE OF COMPLIANCE with the Court WITHIN 14 DAYS from the date of this order.

Williams's Motion to Compel (ECF No. 101) is GRANTED IN PART as to his Request for Production No. 32.  To the extent it has not already done so, WITHIN 14 DAYS Defense counsel shall provide the "late-submitted PM's to Plaintiff. Defense counsel shall also, WITHIN 14 DAYS, make every effort to obtain the "unsubmitted PM's" (see George Plunkett's deposition), and shall notify Plaintiff's Counsel of its efforts and findings, and provide the documents if found.

Plaintiff's Motion to Compel (ECF No. 101) is DENIED IN PART for his Request for Production No. 36, as to the names of every individual who applied for a millwright job in 2021 and copies of the tests taken by the applicants.

Plaintiff's Motion to Compel Production (ECF No. 101) is also GRANTED IN PART for Request No. 36.  To the extent it has not already done so, WITHIN FOURTEEN DAYS, Defendant is ORDERED TO: (1) provide copies of all job postings that have been posted to the job board for all millwright positions since January 1, 2021; (2) provide the names of the employees who were ultimately selected for those jobs; and (3) state whether or not the employees selected for the

jobs took examinations for the posted positions.  Defendant SHALL FILE A NOTICE OF COMPLIANCE with the Court WITHIN 14 DAYS from the date of this order.

Williams' Motion to Compel (ECF No. 101) is DENIED as to Request for Production No. 38.

Williams's Motion for Attorney's Fees and Costs (ECF No. 101) is DENIED.

THUS DONE AND SIGNED in chambers at Alexandria, Louisiana on this  18th  day of February 2022.

Joseph H.L. Perez-Montes
United States Magistrate Judge