UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **RAY WILLIAMS** | **CASE NO. 17-cv-1366** |
| -vs- | **JUDGE DRELL** |
| **JELD-WEN INC** | **MAGISTRATE JUDGE PEREZ-MONTES** |

## RULING AND ORDER

Before the court are the following motions: a motion for summary judgment, (Doc. 108), filed by defendant Jeld-Wen, Inc. ("Jeld-Wen"), a motion to exclude expert testimony, (Doc. 129), also filed by Jeld-Wen, and a motion for leave to file a third amended complaint, (Doc. 138), filed by plaintiff Ray Williams ("Williams"). For the following reasons, the motion for summary judgment, (Doc. 108), is **DENIED in part** and **GRANTED in part**; the motion to exclude expert testimony, (Doc. 129), is **DENIED**; and the motion to amend the complaint, (Doc. 138), is **GRANTED**.

### I. FACTS AND PROCEDURAL POSTURE

This case concerns employment action, including alleged violations of Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the Age Discrimination Employment Act, 29 U.S.C. § 623, *et seq.* ("ADEA"), and the Louisiana Employment Discrimination Law, La. R.S. 23:301 *et seq.* Plaintiff Ray Williams ("Williams") is an employee of Jeld-Wen and alleges that Jeld-Wen unlawfully discriminated against him because of his age (53 when the case was filed in state court in 2017) and race (African American). (Doc. 1-2 ¶ 6). The original complaint, (Doc. 1-2), the first amended complaint, (Doc. 33), and the second amended complaint, (Doc. 58), allege claims pertaining to promotions, a hostile work environment, and retaliatory job assignments.

Specifically, Williams alleges that (1) Jeld-Wen has on numerous occasions denied Williams a promotion and instead promoted or hired younger white individuals with lesser or similar qualifications, (2) that a co-worker hung a noose in Williams work area, and (3) that Jeld-Wen began assigning him demeaning job duties in retaliation for Williams having filed a complaint with the Equal Employment Opportunity Commission ("EEOC").

During the discovery period, Williams alleges further retaliation in the form of intense interrogation lasting at least an hour over answers provided by Williams' counsel in discovery. (Doc. 77). As a result of such alleged retaliatory action, Williams moved to strike Jeld-Wen's answer to the complaint, moved to impose sanctions, and moved to expedited consideration of Williams' claims. Ultimately, the Magistrate Judge denied the motion but allowed Williams to amend his complaint to include a claim for the retaliatory interrogation. (Doc. 131). Williams then moved for leave to file a third amended complaint to include the instance of retaliatory interrogation and in addition another instance of promoting younger white individuals over Williams. (Doc. 138).

Discovery continued, but neither party was satisfied by the scope and quality of information and documentation provided. As a result, both parties filed motions to compel. (Docs. 89, 101). Shortly thereafter, Jeld-Wen filed the instant motion for summary judgment. (Doc. 108). The motion for summary judgment is opposed by Williams, claiming, among other things, that the motion is premature in light of pending motions to compel. (Doc. 123). Williams' opposition also presented the report of expert Dr. Robert G. Rose, Ph.D. but prefaced saying that Dr. Rose's report is incomplete because information and documentation necessary to conduct a full report was improperly withheld in discovery and was the subject of Williams' motion to compel. Jeld-Wen filed its reply to Williams' opposition to the motion for summary judgment, (Doc. 128), and the

said motion to exclude the expert testimony of Dr. Rose, (Doc. 129). The motion to exclude also is opposed based upon the pending motions to compel. (Doc. 132). The Magistrate Judge has since granted in part and denied in part each party's motion to compel, (Doc. 140), and the parties have filed a notice of compliance thereto, (Docs. 145, 146).

## II. SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 680 (5th Cir. 2011) (internal citations omitted). It is important to note that the standard for summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case. The burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim. Liberty Lobby, 477 U.S. at 250. The nonmoving party must establish the existence of a genuine dispute of material fact for trial by showing the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir. 1995). A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual

allegations which meet his burden of proof. Id. "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." Duffy, 44 F.2d at 312 (citing Liberty Lobby, 477 U.S. at 247).

### III.  LAW

Before pursuing claims in federal court, employment discrimination plaintiffs must exhaust their administrative remedies by filing a charge of discrimination with the EEOC. 42 U.S.C.A. § 2000e-5(b); 29 U.S.C. § 626(c). Under Title VII, "[e]xhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue. A plaintiff must file [his] civil suit within ninety days of receipt of a right-to-sue-letter." Garcia v. Penske Logistics, L.L.C., 631 F. App'x 204, 207–08 (5th Cir. 2015) (internal citations and quotations omitted). However, "[t]he ADEA follows a different administrative exhaustion mechanism. Once a plaintiff has filed a timely EEOC charge of discrimination under the ADEA, the plaintiff must wait 60 days before filing a civil action in state or federal court. If the charge is dismissed, the plaintiff must file within ninety days of the receipt of a notice of dismissal from the EEOC." Id. at 208 (internal citations and quotations omitted).

As explained by the Fifth Circuit,

> [t]he scope of the exhaustion requirement has been defined in light of two competing Title VII policies that it furthers. On the one hand, because "the provisions of Title VII were not designed for the sophisticated," and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. Sanchez v. Standard Brands, Inc., 431 F.2d 455, 463 (5th Cir.1970); Fellows v. Universal Restaurants, Inc., 701 F.2d 447, 451 (5th Cir.1983). On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. Id. at 466. Indeed, "[a] *less* exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance." Sanchez, 431 F.2d at 467. See also Ong v. Cleland, 642 F.2d 316, 319 (9th Cir.1981) ( "[a]llowing a federal court complaint to proceed despite its loose 'fit' with the administrative charge and investigation ... is

> precluded if it would circumvent ... agency efforts to secure voluntary compliance before a civil action is instituted."). With that balance in mind, this court interprets what is properly embraced in review of a Title–VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which "can reasonably be expected to grow out of the charge of discrimination." Sanchez, 431 F.2d at 466. We engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label. Fellows, 701 F.2d at 451; Fine v. GAF Chemical Corp., 995 F.2d 576, 578 (5th Cir.1993); Ong, 642 F.2d at 319.

Pacheco v. Mineta, 448 F.3d 783, 788–89 (5th Cir. 2006) (footnotes omitted). Presumably, similar competing policies apply to the exhaustion requirements of ADEA and the scope of judicial review.

## IV. ANALYSIS

Jeld-Wen's motion for summary judgment contends first that Williams' failed to exhaust his administrative remedies regarding a number of claims levied against Jeld-Wen for failure to promote him. Indeed, several of Williams' claims against Jeld-Wen for failure to promote predate and are not described in the first EEOC charge Williams filed. (Doc. 31-2, 31-3). However, such is not necessary under a theory of continuous violations. The Fifth Circuit in Berry v Board of Sup'rs of L.S.U. established a framework for such a theory with three factors to consider. 715 F.2d 971, 981.

> The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (e.g., a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

Id.

In the instant case, Williams' complaint lists a series of promotion opportunities for which he was denied in favor of another who was younger and white. Accordingly, the subject matter of those complaints is consistent. Second, Williams alleges that he was denied a promotion in each and every instance a promotion opportunity was available, all of which suggests a degree of frequency and reoccurrence. Third, Williams may have had reason to suspect after the first or second time Jeld-Wen declined to promote him that race or age discrimination played a role, but the permanence of that alleged discrimination is recognizable after Jeld-Wen repeatedly failed to promote him and instead promoted or hired a younger white individual with, as Williams claims, lesser or similar qualifications.

Moreover, although Williams did not file an EEOC charge for each instance Jeld-Wen promoted a younger white individual, Williams has filed at least one EEOC charge alleging the same and received a right to sue letter thereon, (Docs. 31-2, 31-3). The scope of our review is not limited "by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.' " Pacheco, 448 F.3d at 789 (citing Sanchez, 431 F.2d at 466). It is not unreasonable to expect that the scope of review of Williams' claim may include an inquiry into the existence of similar past practices outside the EEOC charge filed. Because the claims of retaliatory behavior relate to Williams' filing of EEOC charges and the instant suit, we also agree that those claims have grown out of the charge of discrimination.

Accordingly, every instance Williams alleges that Jeld-Wen did not promote him but instead promoted a younger white individual is actionable under a theory of continuing violations and within the scope of our review. Thus, to the extent that Jeld-Wen's motion for summary judgment seeks to dismiss each of Williams' claims alleging failure to promote and suggesting

non-exhaustion, the motion will be **DENIED**. Similarly, to the extent Jeld-Wen's motion for summary judgment seeks to dismiss each of Williams' claims of retaliation that have not been exhausted, the motion will be **DENIED**.

However, we note that the claims of workplace harassment, which are separate from claims of failure to promote, do not appear to have been exhausted. Williams must show proof that claims of workplace harassment have been timely filed with the EEOC. Without such proof in this record, Williams claims of workplace harassment will be **DISMISSED**.

The remaining aspect of Jeld-Wen's motion for summary judgment, namely that Williams cannot succeed on his claims even if properly exhausted, and Jeld-Wen's motion to exclude the report of Dr. Rose will be **DENIED** as premature because it has been filed before the completion of discovery and ostensibly hinges upon that information.

Finally, Williams' motion for leave to file a third amended complaint will be **GRANTED** in accordance with the Magistrate Judge's sealed memorandum order, (Doc. 131). To the extent that the amendment includes allegations of another instance of failure to promote which is beyond the scope of the Magistrate Judge's allowance, the amendment is allowed because the allegations amount to a continuing violation of Williams' rights already asserted in the EEOC charge for which he obtained a right to sue letter.

## V. CONCLUSION

In light of the foregoing, the motion for summary judgment (Doc. 108) **is GRANTED in part and DENIED in part**. The motion to exclude the expert report of Dr. Rose (Doc. 129) is **DENIED** as premature and the motion for leave to file a third amended complaint (Doc. 138) is **GRANTED**.

The court will issue a judgment in conformity with these findings.

**THUS DONE AND SIGNED** in Alexandria, Louisiana this 3RD day of May, 2022.

                                                DEE D. DRELL, SENIOR JUDGE
                                                UNITED STATES DISTRICT COURT